**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DOJ DOCTORS, | DOCKET NUMBER |
| Appellants, | NY-1221-14-0202-W-1[1] |
| v. | |
| DEPARTMENT OF JUSTICE, | DATE: June 22, 2023 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[2]

F. Michael Daily, Jr., Esquire, Westmont, New Jersey, for the appellants.

Pradip Patel, Columbus, New Jersey, for the appellants.

Kathleen Harne and Tara Chen, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

---

[1] Pursuant to 5 C.F.R. § 1201.36(a)(1), the administrative judge consolidated appeals filed by Pradip Patel, M.D. and Nicoletta A. Turner-Foster, M.D. MSPB Docket No. NY-1221-14-0202-W-1, Consolidation Appeal File (CAF), Tab 2; *see* MSPB Docket Nos. PH-1221-14-0326-W-1 and PH-1221-14-0325-W-1. While the administrative judge issued separate initial decisions, we again consolidate these matters under MSPB Docket No. NY-1221-14-0202-W-1 for consideration of the joint petition for review.

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## FINAL ORDER

¶1      The appellants have filed a petition for review of the initial decisions, which denied their requests for corrective action in their individual right of action (IRA) appeals.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioners have not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED by this Final Order to VACATE the administrative judge's findings concerning one of appellant Patel's disclosures and to supplement the administrative judge's clear and convincing analysis, we AFFIRM the initial decisions, which are now the Board's final decisions.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      On November 12, 2013, the appellants, who are Medical Officers with the Bureau of Prisons, Federal Correctional Institution (FCI) in Fort Dix, New Jersey, filed separate IRA appeals alleging that the agency denied their allowances under the Physicians Comparability Allowance Program (PCAP)[3] in reprisal for their

---

[3] Pursuant to 5 U.S.C. § 5948, for recruitment and retention purposes, a Government physician may receive an allowance not to exceed $14,000 if the physician has served

prior protected disclosures. *Patel v. Department of Justice*, MSPB Docket No. PH-1221-14-0326-W-1, Initial Appeal File (*Patel* IAF), Tab 1; *Turner-Foster v. Department of Justice*, MSPB Docket No. PH-1221-14-0325-W-1 (*Turner-Foster* IAF), Tab 1.  On January 28, 2011, the Warden of Fort Dix notified appellant Turner-Foster that she intended to withhold her PCAP because her productivity over the past 12 months was only at 54% of the required standard.  *Turner-Foster* IAF, Tab 13, Subtab 4(n).  After considering appellant Turner-Foster's response, on February 11, 2011, the Warden issued a decision to withhold appellant Turner-Foster's PCAP.  *Id.*, Subtab 4(g).

¶3        Similarly, on February 7, 2011, the Warden notified appellant Patel that she intended to withhold his PCAP because his productivity over the past 12 months was only at 66% of the required standard.  *Patel* IAF, Tab 12, Subtab 4(v).  On March 16, 2011, after considering appellant Patel's response, the Warden issued a decision to withhold appellant Patel's PCAP.  *Id.*, Subtab 4(j).  The appellants contend that the decisions to withhold their PCAPs were taken in reprisal for protected disclosures they made during a meeting on September 10, 2010, concerning, among other things, late laboratory results, which they maintain posed a substantial and specific danger to public health and safety by preventing physicians from timely ensuring that patients were appropriately responding to treatment.  *Patel* IAF, Tab 1 at 6; *Turner-Foster* IAF, Tab 1 at 6.

¶4        Upon motion by the appellants, the administrative judge consolidated their appeals.  *DOJ Doctors v. Department of Justice*, MSPB Docket No. NY-1221-14-0202-W-1, Consolidation Appeal File (CAF), Tab 2; *Patel* IAF, Tab 20; *Turner-Foster* IAF, Tab 25.  After holding a 5-day hearing, the administrative

---

for 24 months or less, or $30,000 if more than 24 months.  The agency's program statement, which sets forth the terms and conditions for PCAPs, specifies that renewals are not automatic and any job performance or organizational difficulties must be addressed prior to renewal.  *Patel v. Department of Justice*, MSPB Docket No. PH-1221-14-0326-W-1, Initial Appeal File, Tab 12, Subtab 4(ss) at 42.

judge issued initial decisions, denying the appellants' requests for corrective action.[4] *Patel* IAF, Tab 21, Initial Decision (ID). The administrative judge found that, although the appellants had made protected disclosures in September 2010 concerning late laboratory results and had established a prima facie case of whistleblower reprisal, the agency met its burden of establishing by clear and convincing evidence that it would have denied the appellants' PCAPs absent their protected disclosures. ID at 7-33.

¶5 The appellants have filed a joint petition for review. Petition for Review (PFR) File, Tab 1. The agency has opposed the appellants' petition. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

We vacate the administrative judge's finding that appellant Patel's disclosure concerning compensatory time usage was a protected disclosure.[5]

¶6 To prove that a disclosure is protected, an appellant must prove by preponderant evidence[6] that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by him could reasonably conclude that the matter disclosed evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C.

---

[4] Although the appeal was consolidated, the administrative judge issued separate, but nearly identical initial decisions. *Patel* IAF, Tab 21, Initial Decision; *Turner-Foster* IAF, Tab 26, Initial Decision. Unless otherwise specified, all references herein are to the initial decision in *Patel*.

[5] The appellants do not challenge the administrative judge's findings that they failed to prove that their disclosures concerning the lack of translation services and violating the primary care provider team concept were protected disclosures, and we discern no error in the administrative judge's analysis. ID at 9-12.

[6] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

§ 2302(b)(8); *Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶ 5 (2009).[7]

¶7        Appellant Patel testified that he raised concerns that physicians were not permitted to earn compensatory time while the Clinical Director and her husband were routinely allowed to earn compensatory time. CAF, Hearing Transcript (HT) at 63-64. In her initial decision, the administrative judge cited to testimony by agency officials explaining that the difference in treatment was because the physicians were GS-15, step 10 employees, and thus, not eligible for overtime or compensatory time due to limits on premium pay. ID at 12-13. In contrast, the Clinical Director was a GS-15, step 7, and during the relevant time period may have been a GS-15, step 3. ID at 13. Without explanation, the administrative judge found that a reasonable person in the appellant's position would have believed that granting the Clinical Director and her husband compensatory time while denying the physicians compensatory time evidenced one of the situations covered by 5 U.S.C. § 2302(b)(8). ID at 13. We disagree. In his testimony and pleadings below, appellant Patel failed to specify any details as to the grounds for his belief that this disclosure evidenced one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8)(A). Moreover, he did not address this alleged protected disclosure at all in his closing brief. CAF, Tab 20. Accordingly, we find that he failed to prove by preponderant evidence that this constituted a protected disclosure.

The agency proved by clear and convincing evidence that it would have denied the appellants' PCAPs in the absence of their protected disclosures.

¶8        If an appellant makes a prima facie showing of whistleblower reprisal, the burden shifts to the agency to prove by clear and convincing evidence that it

---

[7] All of the relevant events occurred prior to the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465. However, the provisions of the WPEA do not affect our analysis.

would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

¶9        In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Lu*, 122 M.S.P.R. 335, ¶ 7 (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Id.* Furthermore, the Board will consider all the pertinent evidence in the record and will not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-70 (Fed. Cir. 2012).

¶10       Regarding the first *Carr* factor, the administrative judge found that the agency provided strong evidence that it withheld the appellants' PCAPs because they failed to meet the required productivity standard of seeing eight patients per day. ID at 18-24. Although the appellants testified that they were not aware of such a standard, the administrative judge credited the Clinical Director's testimony that physicians not seeing enough patients per day was a historical

issue, the appellants were aware that they were expected to see 8 patients per day, and the standard had been 10 patients per day but was reduced in response to complaints from the physicians. *Id.* The administrative judge further found that the agency's evidence that the appellants failed to meet the eight-patients-per-day standard was strong based on separate analyses which showed that in 2010, appellant Patel saw an average number of 5.4 patients per day[8] and appellant Turner-Foster saw an average number of 4.3 patients per day. ID at 24-25; *Turner-Foster* IAF, Tab 26, Initial Decision at 21-22. Although the appellants disputed these numbers, the administrative judge found that they failed to provide their own calculations and appellant Patel's testimony concerning his calculations changed and was conflicting. ID at 27-28.

¶11    On review, the appellants primarily challenge the administrative judge's findings concerning the first factor. They contend that the administrative judge erred in finding that the agency offered strong evidence establishing that they were required to see eight patients per day or that they failed to meet such a requirement. First, they contend that the administrative judge failed to consider that the record is devoid of any documents prior to the date their PCAPs were denied that set forth an eight-patients-per-day standard. PFR File, Tab 1 at 4-5. Second, they contend that the administrative judge failed to consider that their performance reviews prior to the date their PCAPs were denied were satisfactory and fail to reference any productivity standard. *Id.*

¶12    We acknowledge the appellants' contention that, prior to the denial of their PCAPs, the eight-patients-per-day standard was not specifically memorialized in any written document. PFR File, Tab 1 at 4-5. Rather, it was not until February 11, 2011 that the eight-patients-per-day standard specifically appeared

---

[8] A second analysis, considering appellant Patel's claims that the first analysis failed to account for various factors, such as patient no-shows and his leave, determined that appellant Patel saw 5.7 patients per day. ID at 25.

in the appellants' performance objectives. *Patel* IAF, Tab 12, Subtab 4(u); *Turner-Foster* IAF, Tab 13, Subtab 4(h). However, we nonetheless find that the agency put forth evidence suggesting that such a standard existed prior to 2011. For example, the record includes separate documents dated February 13, 2009, signed by the appellants, setting forth performance expectations for medical officers, which include, among other things, maintaining chronic care clinics (CCC)[9] up to date. *Turner-Foster* IAF, Tab 13, Subtab 4(t); *Patel* IAF, Tab 12, Subtab 4(qq). The Clinical Director, who supervised all of the medical officers, including the appellants, testified that medical officers had to see a certain number of patients per day to maintain their CCCs up to date and that she placed the specific requirement of eight patients per day on the appellants' performance objectives on February 11, 2011, to emphasize that maintaining CCCs up to date meant that the appellants had to see a certain number of patients per day. HT at 809. A November 17, 2010 memorandum similarly reflects that eight patients per day was determined to be the minimum number of patients per day required to prevent overdue CCC. *Patel* IAF, Tab 12, Subtab 4(z).[10]

---

[9] CCC refers to patients who have conditions like diabetes or hypertension that require monitoring. HT at 45, 414. During most of the relevant time, the relevant policy required CCC patients to be evaluated once every 6 months. HT at 45, 415, 702-03.

[10] The appellants challenge the validity of this document on review, correctly pointing out that there are conflicting versions of it in the record. PFR File, Tab 1 at 4, 6-7. One version indicates, "[e]ight cases per day per provider has been determined to be the minimal quota necessary to prevent overdue CCC in FCI Fort Dix. Failure on the part of the provider to meet this minimum can potentially result in overdue CCC." *Patel* IAF, Tab 14 at 9. In contrast, another version indicates, "[e]ight cases per day per provider was agreed upon amongst administration and medical providers during a September 2010 meeting, to be the minimal quota necessary to prevent overdue CCC in FCI Fort Dix. Failure on the part of the provider to meet this minimum can potentially result in overdue CCC." *Patel* IAF, Tab 12, Subtab 4(z); *Turner-Foster* IAF, Tab 13, Subtab 4(r). Although the appellants dispute that they were made aware of this requirement during a meeting in September 2010, the document nonetheless serves to show a link between a required number of patients seen per day and preventing overdue CCCs as set forth in the appellants' performance expectations as of 2009. The

¶13        In addition, the administrative judge credited the Clinical Director's testimony that the appellants were aware of the eight-patients-per-day standard, over the appellants' testimony to the contrary.  In particular, the administrative judge credited the Clinical Director's testimony that she initially set the standard at 10 patients per day, but agreed to decrease it to 8 because the physicians were having difficulty seeing 10 patients per day.  ID at 22.  She found that such testimony was corroborated by a May 13, 2009 memorandum documenting a meeting with the medical officers in which they requested a modification of the number of patients seen and, as a result, the requirement was reduced from an average of 9.2 patients per day to 7.4 patients per day.  ID at 22-23; *Patel* IAF, Tab 14 at 14-15.  The administrative judge further credited the Clinical Director's testimony that, while working for other institutions, she never witnessed doctors seeing fewer than 8 patients per day, but rather generally saw a higher average of 12, 13, or even 15 patients per day.  ID at 27.  Finally, the administrative judge also credited testimony of the Regional Medical Director for the Northeast Region that, for a Care Level 2 facility like Fort Dix, he would expect doctors to see between 8 to 12 patients per day.  ID at 26.  Thus, the appellants' arguments on review constitute disagreement with the administrative judge's credibility determinations and fail to provide a basis for reversal.[11]  *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding that the Board will give due deference to the credibility findings of the administrative judge, and will not grant a petition for review based on a party's mere disagreement with those findings).

appellants do not dispute that they were required to keep their CCCs current.  HT at 189.

[11] The appellants also contend that the administrative judge erred in crediting the Clinical Director's testimony because of her lack of certain professional credentials.  PFR File, Tab 1 at 5-6.  However, such criteria are not relevant in assessing witness credibility.  *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (setting forth the factors generally relevant in making credibility determinations).

¶14      On review, the appellants also contend that, in assessing the strength of the agency's evidence in support of its action, the administrative judge failed to consider that their performance reviews were satisfactory.  PFR File, Tab 1 at 4-5.  We agree with the appellants that their performance reviews contained in the record are all satisfactory and the record does not contain any written warnings or discipline advising them that they were failing to meet the eight-patients-per-day standard in 2010.  However, the record does contain some negative performance references.  In particular, appellant Patel's clinical review on March 26, 2009, showed that he had over 150 overdue CCCs and his review dated October 25, 2010, referenced bringing his CCCs up to date and improving his clinic patient flow.  *Patel* IAF, Tab 4, Subtabs 4(i), 4(pp).  Appellant Turner-Foster's reviews prior to 2010 are not in the record.  However, appellant Turner-Foster testified that the Clinical Director had talked to her about seeing more patients and acknowledged that there was a push to see more and more patients and to maintain CCCs current.  HT at 187, 205.  Thus, although the agency may have failed to warn the appellants via their formal performance reviews that they were not seeing a sufficient number of patients, there is evidence to show that they needed to increase the number of patients they saw each day.

¶15      Additionally, the appellants' production reports prepared by the Clinical Director indicate that their numbers were below eight patients per day.  *Patel* IAF, Tab 12, Subtabs 4(k), 4(w); *Turner-Foster* IAF, Tab 13, Subtabs 4(j), 4(s).  Although appellant Patel disputed these calculations and testified that his own calculations of his productivity showed that he was just as productive if not more productive than another physician, Dr. C., who received a PCAP, he failed to provide such calculations.  HT at 98-99; ID at 27-28.  Similarly, appellant Patel testified that he calculated appellant Turner-Foster's productivity and

provided it to her; however, such calculations are also not part of the record below.[12]  HT at 98.  On review, the appellants dispute the agency's calculations and appear to provide calculations and argument establishing error in the agency's calculations.  PFR File, Tab 1 at 10-14.  However, we decline to consider the appellants' arguments and evidence challenging the agency's calculations raised for the first time on review because they have not shown that such arguments are based on new and material evidence that was not previously available prior to the close of the record below.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980); 5 C.F.R. § 1201.115(d).

¶16       Regarding the second *Carr* factor, we agree with the administrative judge that there was a weak motive to retaliate on the part of the agency officials involved in denying the appellants' PCAPs.  The appellants' protected disclosures concerned patient laboratory results not being processed timely.  The appellants contend that the Health Service Administrator (HSA) had a motive to retaliate against them because this issue pertained to areas under her responsibility.  CAF, Tab 20 at 28; *see Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019-20 (Fed. Cir. 2019) (discussing a professional motive to retaliate when

---

[12] The record below only contains a document prepared by appellant Turner-Foster, which she contends shows that the average number of patients available for her to see daily ranged from 5.61 to 6.5 for the months of October, November, and December 2010.  CAF, Tab 11 at 36.  She testified that she was not able to see eight patients per day because some days she was scheduled to see fewer, or patients did not show up, or a lockdown prevented her from seeing patients.  HT at 224-25.  Appellant Patel testified similarly that he was not always scheduled to see eight patients per day and factors outside of his control, such as patients not showing up, lockdowns, and double bookings prevented him from seeing eight patients per day.  HT at 70-72, 159-60.  However, the administrative judge credited testimony of the Clinical Director that regardless of these factors physicians were advised of ways to increase the number of patients seen per day, such as pulling patients from sick call or having an officer pull a patient from a unit.  ID at 26-27.  She also credited the Clinical Director's testimony that the appellants never requested more scheduled patients; rather, they requested fewer scheduled patients.  ID at 27.

assessing the second *Carr* factor). However, the HSA arrived at Fort Dix in August of 2010, approximately 1 month prior to the date of the appellants' disclosures. *Id.*; HT at 1002. Thus, as the administrative judge found, she essentially inherited the problems that the appellants reported. ID at 29. Although the HSA's recent arrival does not eliminate the possibility of an institutional retaliatory motive, *see Whitmore*, 680 F.3d at 1370-71, we nevertheless find that the appellants' disclosures did not reflect on her personally.

¶17    Further, testimony credited by the administrative judge established that late laboratory results were a longstanding issue prior to the appellants' disclosures. For example, the HSA testified that the issue of late laboratory results was brought to her attention when she first arrived at Fort Dix in August 2010 and, at that time, a phlebotomist vacancy posting was pending. *Id.*; HT at 1002-03. She also testified that they were having difficulties filling the phlebotomist positions due to the inability of applicants to pass the required background investigation, and that in the interim she had assigned others to assist with laboratory tests as a stopgap measure. HT at 1004. Additionally, the Clinical Director testified that, prior to the appellants' disclosures in September 2010, she and two other physicians had complained at meetings about late laboratory results, which were a well-known problem that dated back to December 2008, when she arrived at Fort Dix. ID at 32; HT at 749-50, 831. Based on the foregoing, we agree with the administrative judge that, to the extent the appellants' disclosures reflected poorly on the Health Services Department, the HSA, as head of that department, had little motive to retaliate under these circumstances in which her own reputation was not at stake because she had just begun in her role.

¶18    However, even assuming the HSA had a slight motive to retaliate, she did not make the decision to withhold the appellants' PCAPs. The administrative judge credited her testimony that she attended a meeting with the Warden and the Clinical Director concerning the appellants' PCAPs at the Warden's request, but that she did not provide any input into the decision to withhold their PCAPs. ID

at 30. The administrative judge found that such testimony was corroborated by both the Clinical Director and the Warden. ID at 31.

¶19 Regarding the Clinical Director, we agree with the administrative judge that she did not have a motive to retaliate based on the appellants' protected disclosures concerning late laboratory results, which she agreed were a problem and had previously raised as an issue herself. ID at 32. Although, as the administrative judge found, the Warden could have had a slight motive to retaliate because a backlog of late laboratory results reflects poorly on the institution which she heads, ID at 31, the Warden testified that she was not aware of the appellants' disclosures until after she denied their PCAPs, ID at 15, HT at 982-83. Thus, we find that she did not have a motive to retaliate.

¶20 Finally, the record reflects that the agency's treatment of whistleblowers does not suggest a motive to retaliate because: (1) the administrative judge credited the testimony of the Warden that, after appellant Patel increased his average number of patients per day to close to eight, she renewed his PCAP the following year; and (2) Dr. C and Dr. S, who also similarly complained of the late laboratory results but saw a higher number of patients per day than the appellants, both received their PCAPs. ID at 32; *see Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (stating that an agency's treatment of other whistleblowers may illuminate any motive to retaliate under the second *Carr* factor).[13] On review, the appellants dispute the agency's calculations concerning Dr. C's average number of patients and contend that they fail to show the actual number of days Dr. C worked. PFR File, Tab 1 at 10-14. They also set

---

[13] Although the administrative judge considered such evidence in her analysis of the third *Carr* factor, we find that it is more appropriately addressed under the second *Carr* factor. ID at 32; *see Siler*, 908 F.3d at 1299 (noting that the focus of the third *Carr* factor is the agency's treatment of non-whistleblower employees accused of similar misconduct and, thus, the Board erred in considering evidence of the agency's treatment of other whistleblowers under the third *Carr* factor).

forth their own calculations based on electronic records, which they contend were presented to the Office of Special Counsel and through discovery. *Id.* at 12-13. However, such arguments were not raised in the proceedings below and the appellants failed to cross examine the agency's witnesses concerning these alleged errors in the calculations or introduce any exhibits at the hearing showing the specific numbers they relied upon in forming their beliefs that Dr. C's average number of patients seen was less than 7.9. Thus, we decline to consider these arguments for the first time on review. *See Banks*, 4 M.S.P.R. at 271; *Avansino*, 3 M.S.P.R. at 214; 5 C.F.R. § 1201.115(d).

¶21 Regarding the third *Carr* factor, the administrative judge found that the other doctors who were not whistleblowers were not similarly situated because they had all met the eight-patient-per-day standard. ID at 32. Thus, to the extent there is no evidence indicating that similarly situated non-whistleblowers were treated differently than the appellants, the third *Carr* factor is not a significant factor in the Board's analysis. *See Whitmore*, 680 F.3d at 1374 (noting that the agency is not required to submit evidence as to each *Carr* factor and recognizing that the absence of evidence relating to the third *Carr* factor "can effectively remove that factor from the analysis").

¶22 For the reasons discussed in the initial decision and herein, we find that the strength of the agency's evidence in support of its actions outweighs any weak motive to retaliate and our overall analysis of the *Carr* factors supports the conclusion that the appellants are not entitled to corrective action.

The appellants' remaining arguments do not provide a basis for reversal.

¶23 The appellants contend that the administrative judge erred in not allowing their attorney to use leading questions when examining agency officials they called on direct examination. PFR File, Tab 1 at 3-4, 15. They contend that, pursuant to Federal Rule of Evidence 611, the administrative judge should have permitted leading questions during examination of these officials. *Id.* The record reflects that the administrative judge denied the appellants' counsel's request to

use leading questions, finding that although the agency officials were adverse parties, they were not hostile witnesses. HT at 463-64. Federal Rule 611(c)(2) states that leading questions should ordinarily be allowed "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

¶24 However, the Board regards the Federal Rules of Evidence as nonbinding guidance and, thus, an administrative judge is not required to strictly adhere to them. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 35 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011); *Arterberry v. Department of the Air Force*, 25 M.S.P.R. 582, 583 (1985). Further, administrative judges have broad discretion in the manner in which they conduct hearings. *See Fritz v. Department of Health and Human Services*, 87 M.S.P.R. 287, ¶ 15 (2000); 5 C.F.R. § 1201.41(b). Nonetheless, we have reviewed the record and find that to the extent the administrative judge may have abused her discretion in not permitting leading questions, any such abuse of discretion was not prejudicial to the appellants because the record reflects that the agency officials were cooperative witnesses and the appellants were able to elicit testimony regarding the relevant issues. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶25 Accordingly, we deny the appellants' petition for review and affirm the initial decisions, as modified.[14]

---

[14] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

**NOTICE OF APPEAL RIGHTS**[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420, (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                                /s/ for
                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.